UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Zachary Tarry, Chris Gagliastre, and Olga Zayneeva, | Civil Action No. 4:19-cv-800-MGL |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | |
| v. | Jury Trial Demanded |
| Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; and Sharon Pitsilides; | |
| Defendants. | |

FIRST AMENDED CLASS ACTION COMPLAINT

1.　　Zachary Tarry, Chris Gagliastre, and Olga Zayneeva, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; Sharon Pitsilides (collectively "Defendants" or "Captain George's"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals as required by the South Carolina Payment of Wages Act ("SCPWA"), Code Ann. § 41-10-10, *et seq.*

2.　　Defendants own Captain George's Seafood Restaurant in Myrtle Beach, South Carolina.

3.　　Plaintiffs worked for Captain George's as servers.

4.     Plaintiffs bring this action on behalf of themselves and similarly situated servers at Captain George's to remedy violations of the SCPWA, S.C. Code Ann. § 40-10-10, *et seq*.

5.     Plaintiffs originally filed SCPWA claims in the District of South Carolina on May 19, 2017. *Gagliastre v. Capt. George's Seafood Restaurants*, No. 4:17-cv-1308 (D.S.C.). The case was transferred to the Eastern District of Virginia. On October 4, 2018, on Defendants' Motion, Judge Raymond Jackson, U.S. District Judge in the Eastern District of Virginia, issued an order declining to exercise supplemental jurisdiction over Plaintiffs' state law claims. *Gagliastre v. Capt. George's Seafood Restaurant, LP*, No. 2:17-cv-379, Dkt. 192 (E.D.Va. Oct. 4, 2018). On November 2, 2018, Plaintiffs filed their SCWPA claims in the Court of Common Pleas, Horry County, South Carolina. Defendants thereafter removed the case to this United States District Court.

## I.  Jurisdiction and Venue

6.     This Court has diversity jurisdiction over this matter, as Defendants' reside in state of Virginia, and Plaintiffs reside in the state of South Carolina.

7.     Venue is proper in this Court because a substantial part of the facts, circumstances, and events giving rise to this Complaint took place in this District.

## II.  Parties

**Plaintiffs**

**Chris Gagliastre**

8.     Plaintiff Chris Gagliastre is an individual residing in Horry County, South Carolina.

9.     At all relevant times, Gagliastre was Defendants' "employee" within the meaning of the SCPWA.

2

10.     Gagliastre worked for Defendants as a server from March to August of 2015 in Myrtle Beach, South Carolina, and was subject to the policies and practices described herein.

**Zachary Tarry**

11.     Plaintiff Zachary Tarry is an individual residing in Horry County, South Carolina.

12.     At all relevant times, Tarry was Defendants' "employee" within the meaning of the SCPWA.

13.     Tarry worked for Defendants as a server and as a bartender from August 2014 to the summer of 2015, and was subject to the policies and practices described herein.

**Olga Zayneeva**

14.     Plaintiff Olga Zayneeva is an individual residing in Horry County, South Carolina.

15.     At all relevant times, Zayneeva was Defendants' "employee" within the meaning of the SCPWA.

16.     Zayneeva worked for Defendants from June 2015 to approximately late 2017, and was subject to the policies and practices described herein.

**<u>Defendants</u>**

**Captain George's of South Carolina, LP**

17.     Defendant Captain George's of South Carolina, LP is a foreign limited partnership, with its headquarters in Virginia.

18.     Captain George's of South Carolina, LP operates the Captain George's Seafood Restaurant located at 1401 29th Avenue N, Myrtle Beach, South Carolina 29577.

19.     Captain George's of South Carolina, LP is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the SCPWA.

3

20. Captain George's of South Carolina, LP applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers, including policies, practices, and procedures relating to payment of wages, tips, and deductions.

21. Captain George's of South Carolina, LP maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, deductions, and other practices.

**Captain George's of South Carolina, Inc.**

22. Defendant Captain George's of South Carolina, Inc. is a foreign corporation, with its headquarters in Virginia.

23. Captain George's of South Carolina, Inc. owns all or part of Captain George's of South Carolina, LP.

24. Captain George's of South Carolina, Inc. is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the SCPWA.

25. Captain George's of South Carolina, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers, including policies, practices, and procedures relating to payment of wages, tips, and deductions.

26. Captain George's of South Carolina, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, deductions, and other practices.

**Pitsilides Management, LLC**

27. Defendant Pitsilides Management, LLC is a foreign limited liability company with its headquarters in Virginia.

28.     Pitsilides Management, LLC is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

29.     Pitsilides Management, LLC is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the SCPWA.

30.     Through Pitsilides Management, LLC, Defendants centralize their payroll and benefits policies, practices, and operations.

31.     Pitsilides Management, LLC receives a management fee from Captain George's of South Carolina, LP and Captain George's of South Carolina, Inc. for marketing efforts, payroll services, benefits management, food, beverage and supply purchasing services, and some premises and equipment management services.

32.     Pitsilides Management, LLC receives reports from Captain George's of South Carolina, LP and Captain George's of South Carolina, Inc. every two weeks regarding hours worked by the employees at the four Captain George's locations, generates paychecks, and overnights the paychecks to the four Captain George's locations.

33.     Pitsilides Management, LLC maintains the payroll records for all of Defendants' employees.

34.     Pitsilides Management, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers, including policies, practices, and procedures relating to payment of wages, tips, and deductions.

35.     Pitsilides Management, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, timekeeping, payroll, deductions, tips, and other practices.

**George Pitsilides**

36.     Defendant George Pitsilides is the founder, owner, and operator of all of the Defendant entities.

37.     George Pitsilides is the owner and president of Captain George's of South Carolina, LP.

38.     George Pitsilides is the owner and president of Captain George's of South Carolina, Inc.

39.     George Pitsilides lives in Virginia Beach, Virginia.

40.     Upon information and belief, George Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454. At all relevant times, George Pitsilides has been an "employer" of Plaintiffs and similarly situated servers as that term is defined by the SCPWA.

41.     At all relevant times, George Pitsilides has been actively involved in managing the operations of the Captain George's restaurants, including the Myrtle Beach location.

42.     At all relevant times, George Pitsilides has had control over Defendants' pay policies.

43.     At all relevant times, George Pitsilides has had power over personnel and payroll decisions at the Captain George's restaurants, including the power to hire or fire employees. At all relevant times, George Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

44.     At all times relevant, George Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

45.     At all relevant times, George Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

46.     At all relevant times, George Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

47.     At all relevant times, George Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

**Sharon Pitsilides**

48.     Defendant Sharon Pitsilides is a founder, owner, and operator of all of the Defendant entities.

49.     Upon information and belief, Sharon Pitsilides lives in Virginia Beach, Virginia.

50.     Upon information and belief, Sharon Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

51.     At all relevant times, Sharon Pitsilides has been an "employer" of Plaintiffs and similarly situated tipped wage employees as that term is defined by the SCPWA.

52.     Sharon Pitsilides is an employee of Pitsilides Management, LLC.

53.     Sharon Pitsilides has worked alongside her husband in operating the Captain George's restaurants for forty years.

54.     George Pitsilides has credited the success of the Captain George's restaurants to he and Sharon Pitsilides' team approach and the way they handle everyday operations together.

55.     At all relevant times, Sharon Pitsilides has been actively involved in managing the operations of the Captain George's restaurants, including the Myrtle Beach location.

56.     At all relevant times, Sharon Pitsilides has had control over Defendants' pay policies.

57.     At all relevant times, Sharon Pitsilides has had power over personnel and payroll decisions at the Captain George's restaurants, including power to hire or fire employees.

58.     On at least one occasion, Sharon Pitsilides has been involved in the decision to hire, fire, and/or discipline employees who worked at Captain George's.

59.     At all relevant times, Sharon Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

60.     At all times relevant, Sharon Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

61.     At all relevant times, Sharon Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

62.     At all relevant times, Sharon Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

63.     At all relevant times, Sharon Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

### III.    Factual Allegations

64.     During all relevant times, Defendants operated the Captain George's Seafood Restaurant in Myrtle Beach, South Carolina. This is one of four Captain George's Seafood Restaurants.

65.     Plaintiffs and the similarly situated persons they seek to represent are current and former servers employed by Defendants.

66.     At all or some of the time period relevant to this action, Defendants paid servers below full federal minimum wage. In other words, Defendants purported to pay servers a "tipped minimum wage."

67.    During the relevant time period full federal minimum wage was $7.25 per hour, and "tipped minimum wage" was $2.13 per hour.

68.    During some of the time period relevant to this action, Defendants paid servers wages of $2.125 per hour.

69.    During this time period, Defendants did not provide servers with written notice that their hourly wage would be $2.125 per hour.

70.    To the contrary, Defendants verbally represented to servers that Defendants would pay the servers $2.13 per hour.

71.    In addition, Defendants failed to properly inform and/or notify servers that Defendants would be taking a tip credit deduction from servers' wages.

72.    Defendants did not provide written notice to servers of the amount and terms of Defendants' deduction from servers' wages related to claiming a tip credit.

73.    Moreover, Defendants did not provide the FLSA-mandated notices or meet the other FLSA requirements to claim a tip credit.

74.    Defendants did not notify the servers in writing of the wages agreed upon, the time and place of payment, the deductions which would be made from servers' wages, and/or the deductions that were taken from servers' wages.

75.    Defendants required servers to pay a certain percentage of their total sales directly to the restaurant out of the tips they received.

76.    Defendants regularly required servers to pay between 2% and 3% of their total sales for a shift to the restaurant out of their tips.

77.    For example, if the servers generated $1,000 in sales, and were tipped $200 from the customers, Defendants required the servers to pay between $20 (2%) and $30 (3%) to the

restaurant out of the servers' tips.

78.     Defendants used some of servers' tips to pay hourly wages to bussers, buffet runners, and bartenders. This money was paid to the bussers, buffet runners, and bartenders on those individuals' paychecks.

79.     Defendants also used some of servers' tips to pay other employees in cash on a nightly basis, including bartenders and management employees.

80.     Some of the individuals who received nightly tip outs from servers' tips were not eligible to participate in a valid tip pool.

81.     Management employees were not eligible to share in the tip pool.

82.     Defendants also retained some of the tip money paid out by servers. Defendants put this money in Defendants' operating account.

83.     Defendants used money tipped out by servers according to Defendants' house tip out policy for expenses associated with running their business.

84.     In one or more workweeks during the relevant time period, servers tipped out more money in tips than Defendants paid out to bussers, buffet runners, and bartenders.

85.     In those workweeks when servers tipped out more money in tips than Defendants paid out to bussers, buffet runners, and bartenders, Defendants retained the servers' tips that were not paid out.

86.     Defendants did not provide servers with the notice required by South Carolina law with respect to the house tip out deductions.

87.     Servers had *de facto* deductions taken from their wages and tips because Defendants required servers to pay all of the compensation of individuals who rolled silverware for the benefit of Defendants.

10

88.     Defendants required servers to share tips with and/or pay fees to silverware rollers who were not customarily engaged in customer service on each shift they worked.

89.     Defendants did not provide servers with the notice required by South Carolina law with respect to the deductions related to silverware roller pay.

90.     Silverware rollers are not employees of Captain George's and were not paid a wage by the restaurant.

91.     Servers are or have been at some point during the relevant time period required to make a cash payout to the silverware rollers each shift, ranging from $3 to $7 per shift.

92.     Servers' payments to silverware rollers are collected by Defendants and distributed to the silverware rollers.

93.     Defendants set the price of the per-shift payments made by servers to silverware rollers.

94.     The per-shift payment to silverware rollers changes based on the time of year and how busy the restaurant is.

95.     Defendants "hire" the silverware rollers. No one is allowed to roll silverware at Defendants' restaurants without Defendants' approval.

96.     Defendants require a certain amount of silverware to be rolled based on how many customers they have.

97.     At some point in the last 20 years, Defendants required servers to roll silverware. However, because Defendants were unhappy with the manner, amount, and consistency of the silverware rolled by servers, they began to bring in individuals who only rolled silverware.

98.     The silverware rollers did not wear uniforms.

99.     The silverware rollers did not receive any wages. The only compensation they

11

received was the server per-shift pay out.

100.    The silverware rollers rolled silverware in a backroom, out of the view of customers.

101.    When servers' overtime hours were recorded and paid by Defendants, they were paid at an incorrect overtime rate. The rate was less than one-and-a-half times the servers' regular rate.

102.    Defendants did not notify that they were paying servers at a rate less than one-and-a-half-times the servers' regular hourly rate.

103.    Defendants required servers to purchase one uniform shirt at the beginning of their employment.

104.    If the server worked for Defendants for six months, they either received another work shirt for free, or were reimbursed for the uniform shirt they purchased.

105.    Defendants did not provide servers with the notice required by South Carolina law with respect to the deductions related to uniform costs.

106.    Defendants required servers to tip out extra amounts on various occasions to cover costs of equipment for the restaurant. For example, Defendants sometimes required servers to tip out an extra amount to cover the costs of the restaurant purchasing new silverware, or to cover the costs of the restaurant purchasing new POSitouch cards. These payments were made at the same time and in the same manner as the per-shift payments for silverware rollers.

107.    Defendants withheld and/or diverted a portion of servers' wages in violation of the law.

108.    Defendants withheld and/or diverted a portion of servers' wages without providing written notification.

109.    Defendants took improper deductions from servers' wages.

110.    Defendants took improper deductions from servers' tips.

111.    Defendants required servers to cover expenses that served Defendants' benefit, causing *de facto* deductions from the servers' wages and tips.

112.    Defendants did not provide proper notice of the deductions they were taking from tipped wage employees' wage and tips.

113.    Defendants' policies caused tipped wage employees to be paid less than minimum wage and overtime.

114.    Defendants have not paid tipped wage employees all wages due to them on their regularly scheduled payday.

115.    Defendants had no good faith basis to believe any of the compensation policies described above complied with federal or state wage and hour laws.

**IV.     Class Action Allegations**

116.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or worked as servers for Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; and/or Sharon Pitsilides in South Carolina between May 19, 2014 and the date of final judgment in this matter (the "Rule 23 Class").

117.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

118.    The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

119.    There are more than 50 Rule 23 Class members.

120.    The Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

121.    The Plaintiffs and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of having their a portion of their income unlawfully deducted by Defendants.

122.    The Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with S.C. Code Ann. § 41-10-10, *et seq*.

123.    The Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

124.    The Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

125.    The Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the South Carolina Class.

126.    The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

127.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

128.    This action is properly maintainable as a class action under Rule of Civil Procedure 23(b)(3).

129.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting the Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Defendants took deductions from the wages and/or tips of Plaintiffs and the Rule 23 Class;

    b.   Whether Defendants provided proper notice of the deductions that they took from the wages and/or tips of Plaintiffs and the Rule 23 Class;

    c.   Whether Plaintiffs and the Rule 23 Class have had any amounts of their wages or tips diverted or withheld by Defendants;

    d.   Whether Plaintiffs and the Rule 23 Class were paid all wages due to them on their scheduled payday; and

15

    e.   The nature and extent of class-wide injury and the measure of damages for those injuries.

130.    In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## V.    Causes of Action

<u>Count 1</u>
**South Carolina Payment of Wages Act**
**(On Behalf of Plaintiff and the Rule 23 Class)**

131.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

132.    Defendants are "employers" as defined by the SCPWA.

133.    Defendants employed Plaintiffs and the Rule 23 Class within the state of South Carolina.

134.    Defendants illegally deducted amounts from the wages of Plaintiffs and the Rule 23 Class without providing the notice required by S.C. Code Ann. § 41-10-30(A). These deductions without proper notice include the following:

    a.   Defendants deducted, withheld, and/or diverted servers' tip money.

    b.   Defendants deducted servers' wage money while purporting to pay servers a "tipped minimum wage."

    c.   Defendants deducted money from servers' tips and/or wages by requiring servers to compensate Defendants' silverware rollers.

    d.   Defendants deducted money from servers' wages to pay for uniform shirts.

16

135.    Plaintiffs and the Rule 23 Class did not receive proper notice of any of the deductions taken from their wages as required by S.C. Code. Ann. § 41-10-40(C).

136.    Defendants diverted or withheld portions of the wages and/or tips of Plaintiffs and the Rule 23 Class.

137.    Defendants did not notify Plaintiffs and the Rule 23 Class of the actual wage they paid Plaintiffs and the Rule 23 Class as required by S.C. Code 41-10-30(A). For example, Defendants verbally told servers that Defendants would pay them $2.13 per hour when, in fact, Defendants paid servers less than that amount. Likewise, Defendants verbally represented to servers that Defendants would pay the servers one-and-a-half-times the servers' regular rate when, in fact, Defendants paid servers less than this amount.

138.    By virtue of any or all of the statutory violations described in this Amended Complaint, Defendants did not pay Plaintiffs and the Rule 23 Class all wages due as required by S.C. Code Ann. § 40-10-40(D).

139.    Defendants' unlawful deduction policy was instituted willfully.

140.    Defendants had no good faith basis to believe the compensation policies described herein complied with state wage laws.

141.    Defendants acted with reckless disregard as to whether their compensation policies with respect to servers complied with state wage laws.

142.    By the conduct described herein, Defendants have violated the SCPWA.

143.    As a result of Defendants' violations of the SCPWA, Plaintiffs are entitled to payment of all unlawfully deducted, diverted, and/or withheld wages and tips, together with treble damages, attorneys' fees, costs, and injunctive relief.

17

**WHEREFORE**, Plaintiffs Chris Gagliastre, Zachary Tarry, and Olga Zayneeva pray for all of the following relief:

A.     Certification of this case as a class action pursuant to Rule 23 of the Rules of Civil Procedure with respect to the Rule 23 Class;

B.     Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

C.     A declaratory judgment that the practices complained of herein are unlawful under the SCPWA.

D.     An award of all unlawfully deducted, diverted, and/or withheld wages and tips due under the SCPWA.

E.     An award of treble damages under the SCPWA.

F.     An award of prejudgment and post-judgment interest.

G.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

H.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Glenn V. Ohanesian
Glenn V. Ohanesian
Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Telephone: 843-626-7193
Facsimile: 843-492-5164
Email: OhanesianLawFirm@cs.com

Andrew Biller (*pro hac vice*)
Trial Counsel
Andrew Kimble (*pro hac vice*)

18

Philip Krzeski (*pro hac vice*)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-452-3442 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)
(pkrzeski@billerkimble.com)

www.billerkimble.com

C. Ryan Morgan (*pro hac vice*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32802-4979
407 420-1414 (Phone)
407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*pro hac vice*)
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400
Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

*Counsel for Plaintiffs*

JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Glenn Ohanesian

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed through the Court's ECF system, notice of which was sent to all counsel of record.

/s/Glenn V. Ohanesian

 Glenn V. Ohanesian
Law Offices of Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Email: OhanesianLawFirm@cs.com