UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Zachary Tarry, Chris Gagliastre, and Olga Zayneeva, | Civil Action No. 4:19-cv-800-MGL |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | |
| v. | |
| Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; and Sharon Pitsilides; | |
| Defendants. | |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS [DKT. 56]

1. **Introduction**

Defendants' Motion to Dismiss includes a little bit of everything, no matter how inconsistent the arguments are. For example, on one hand, Defendants argue that there is no private cause of action available for Plaintiffs' claims. Defendants' Memorandum in Support of Motion to Dismiss, Dkt. 56-1 at 2. On the other hand, Defendants recognize that a private cause of action exists because they claim the statute of limitations has expired. *Id.*, at 19, citing S.C. 41-10-80(C) (which grants a private cause of action). And, at the same time, Defendants claim that Plaintiffs' causes of action are all the same ones raised in the prior *Gagliastre* FLSA suit, thereby apparently acknowledging that Defendants had notice of the claims, so the statute of limitations has actually been tolled. *Id.*, at 2.

Defendants' own brief defeats most of Defendants' arguments. To dispose of the rest, Plaintiffs address each of Defendants' arguments below. In the end, Plaintiffs' First Amended Complaint in this case ("*Tarry")* sets forth more than sufficient facts to establish liability under the South Carolina Payment of Wages Act ("SCPWA"). And, as Judge Jackson held in *Gagliastre*, those claims are not settled: "the Court finds that the Settlement Agreement does not preclude the South Carolina Plaintiffs from bringing their South Carolina state law claims in the South Carolina litigation, as the Virginia litigation settled only the FLSA claims against the Defendants." *See Gagliastre* Amended Order, Dkt. 287, PAGEID 4355 (Sept. 20, 2019).[1]

Substance aside, in their motion, Defendants allege that the Plaintiffs have recovered a "windfall settlement" and are not entitled to "double recovery". Dkt. 56-1 at 1-2. Defendants not only mischaracterize Plaintiffs' South Carolina claims, they also attempt to create the illusion that $2.4 million was paid to the same individuals who would be covered by the *Tarry* Rule 23 class. That simply is not true because (1) only about 170 of approximately 1,000 South Carolina servers opted into the *Gagliastre* FLSA case and (2) the *Gagliastre* settlement included employees at restaurants in Kill Devil Hills, North Carolina, Virginia Beach, Virginia and Williamsburg, Virginia as well as Myrtle Beach, South Carolina, and other non-server tipped employees. Thus, rather than a "windfall" or "double recovery" the vast majority of the eligible individuals (about 83%) in this case received virtually nothing[2]—and Defendants aim to keep it that way.

---

[1] The Virginia court originally held in abeyance the issues of whether to sanction Defendants. See Gagliastre Enforcement Hearing Transcript, 29:10–11 (attached as Exhibit 1). On September 19, 2019, the Virginia court issued an Order, continuing to hold the issue of sanctions in abeyance. *See Gagliastre*, Docket Text, Dkt. 286. The next day, the court denied Plaintiffs' request for sanctions with an amended Order, Dkt. 287.

[2] Plaintiffs use the word "virtually" because, as a result of the *Gagliastre* lawsuit, Defendants "voluntarily," and without consultation with Plaintiffs or court approval, sent checks to at least some individuals to repay them for the unlawfully deducted half-cent and at least part of the

Plaintiffs have consistently asserted valid claims under both federal and state law. As demonstrated below, the assertion of the state law claims began with the initial Complaint in *Gagliastre* in May 2017 and continues today. Defendants clearly understood that the state law claims were separate and apart from the federal claims, and so stated in the fairness hearing on the *Gagliastre* settlement on March 4, 2019. Since that date, however, Defendants have waged an all-out war in both the *Gagliastre* and *Tarry* cases, alleging some variation of either exist no state law claims survive or the state law claims have been settled in *Gagliastre*. Defendants' Motion to Dismiss is but the latest such pleading.

Plaintiffs respectfully ask the Court to deny Defendants' Motion.

### 2. General and Procedural Background of *Gagliastre* and *Tarry*

Plaintiffs, who are restaurant workers, originally brought a lawsuit in this District against various Captain George's Seafood entities and individuals. *Gagliastre v. Captain George's Seafood Restaurants, LP*, Dkt. 1 (May 19, 2017). In sum, Defendants broke nearly every FLSA rule possible. Defendants (1) stole hundreds of thousands of dollars in employee tip money and put the money right in the company's bank account, (2) inexplicably paid workers a half-cent less than tipped minimum wage, (3) paid the wrong overtime rate, (4) included non-tipped workers in an employee tip pool, (5) charged employees for uniforms and various tools, dropping workers further below tipped minimum wage, and (6) never notified employees of the FLSA's tip credit provisions. *Id.*, at ¶¶ 173–188, Amended Complaint, Dkt. 57, at ¶¶ 140–162 (Aug. 17, 2017). Plaintiffs included these FLSA claims in their original lawsuit. *Id.* Plaintiffs *also* included claims

---

underpaid overtime wages. The payments were nominal. Along with the payments, Defendants sent the employees a letter purporting to describe the claims and the lawsuit. This inappropriate communication led the Virginia Court to grant Plaintiffs' Motion to include corrective language in the collective action notice. *See Gagliastre*, Dkt. 114, 126, and 131.

that Defendants' pay policies and practices violated South Carolina state law (the "SCPWA claims"). *Gagliastre*, Dkt. 1 at ¶¶ 270–278. The case was eventually transferred to the Eastern District of Virginia, where Defendants' operations are headquartered. *Gagliastre*, Dkt. 30.

Approximately one year later, Defendants asked the Virginia Court to decline to exercise supplemental jurisdiction over Plaintiffs' SCPWA claims. Specifically, Defendants argued that the "prospective class action plaintiffs will be free to pursue their claims before state courts accustomed to adjudicating claims under their respective (and unique and inconsistent) state laws, with the added benefit of a full, final and prompt adjudication of the FLSA claims by this Court." *Gagliastre*, Defendants' Memorandum in Support of Motion to Dismiss, Dkt. 183, PAGEID 2692. On October 4, 2018, the *Gagliastre* court declined to exercise supplemental jurisdiction over Plaintiffs' South Carolina claims holding "that Plaintiffs would suffer no prejudice if the South Carolina state law claims were tried in state court." *See Gagliastre* Memorandum Order, Dkt. 190, PAGEID 2799.

Less than a month later, on November 2, 2018, Plaintiffs filed this case, *i.e.*, "*Tarry*," asserting the South Carolina state law claims in state court. The *Tarry* Complaint contained a single count, consisting of South Carolina Payment of Wages Act violations, with specific citations to the statutory provisions that Defendants' practice violated. Complaint, Dkt. 1 ¶¶ 104-114. Plaintiffs did not assert any FLSA claims in the South Carolina Complaint. Defendants removed the state court complaint to federal court on March 15, 2019 based on diversity and that the alleged amount in controversy exceeds $5,000,000 (28 U.S.C. §1332). Dkt. 1.

Meanwhile, Plaintiffs proceeded with discovery in the *Gagliastre* case. During a deposition of William Hagan, Defendants' Accounting Consultant, on November 9, 2018, Plaintiffs exposed that Defendants had stolen massive sums of employee tips from their Myrtle Beach, South Carolina

servers and put the money right in Defendants' operating account. From there, Defendants used the money to pay their own expenses. At that point, Defendants expressed an acute interest in settling the *Gagliastre* case.

On December 13, 2018, the parties attended a mediation in the *Gagliastre* case with Retired Judge F. Bradford Stillman and the negotiations before and during the mediation were about settling only the FLSA claims in that case and a second, small federal case (both cases totaling 373 opt-ins).[3] At the mediation, the parties reached an agreement whereby Defendants would pay a little over $2,400,000 to settle the FLSA claims in the *Gagliastre* case and the second federal case. The Memorandum of Understanding states that "[t]his agreement does not affect South Carolina state court action." *See* MOU (attached as Exhibit 2).

A Fairness Hearing in the *Gagliastre* case was held on March 4, 2019 on the proposed FLSA settlement. Before the Fairness Hearing, the attorney who had been representing the Defendants, Alan Albert of the law firm O'Hagan Meyer PLLC, withdrew and Christopher Abel took over the representation. At the Fairness Hearing Mr. Abel told the court:

> *One of the terms is that the state court cases in South Carolina would be addressed separately outside this agreement. They agreed to that, they are going to be bound by that.*
>
> I will note that upon coming into this case a week ago, I had expressed to our opponents the desire to see if we can't settle those as well, make it one global settlement of all the wage and [hour] claims, both here and in South Carolina and, to that end, I propose that we jointly approach the Court and ask for a relatively brief continuance of this hearing in order to bring that about….I would note that my clients would still like the opportunity to actually reach a global settlement of all those claims, such that there's nothing left hanging out there. Because right now they are looking at a circumstance where they are going to pay $2.4 million and then some to settle this case and then effectively litigate a lot of the same issues in state court.

---

[3] The small, federal case was filed for several individuals who filed their FLSA consent-to-join forms after the Gagliastre court's deadline to opt in.

THE COURT: …Now, the Court doesn't understand there would still be some state court actions in South Carolina?

MR. ABEL: Yes, sir. In fact –Mr. Biller and I were talking about what the dollar amounts that that would be, though I'm understanding that could be well in excess of a million dollars plus – in some cases, the very same plaintiffs are seeking now in a state court action on the same facts down in South Carolina.

Understand, there is the South Carolina state law at work, but it was my client's desire, look, let's just settle all of these once and for all.

Fairness Hearing Transcript 9:12-10:23 attached as Exhibit 3 (emphasis added).

On May 29, 2019, the *Gagliastre* court approved the FLSA settlement for the individuals who had opted-into the case. *See Gagliastre*, Memorandum Opinion and Order, Dkt. 269. The Settlement Agreement, which the Court approved, stated:

The term "Released Claims" does not include (a) claims arising under the laws of the State of South Carolina asserted by and through the action presently pending in the Court of Common Pleas for the Fifteenth Judicial Circuit of the State of South Carolina, under the style and number *Tarry v. Captain George's of South Carolina, LP,* Case No. 2018CP606184….

*Gagliastre*, Dkt. 276-1 p. 5.

On May 30, 2019, the day after the Court approved the *Gagliastre* settlement, Defendants sent a five-page letter to Plaintiffs' counsel arguing that the claims pending in *Tarry* were released by the settlement. Eventually, this dispute led to the parties filing cross-motions to enforce the settlement in front of the Virginia Court.

On September 19, 2019, the *Gagliastre* court entered its order granting Plaintiffs' motion to enforce and denying Defendants' motion. *Gagliastre*, Dkt. 286. Throughout the hearing, Judge Jackson repeatedly stated that the Agreement did not settle any South Carolina law claims, regardless of Defendants' theory that the claims were somehow "related," factually, conceptually, or otherwise. *See, e.g.*, Enforcement Transcript, Ex. 1, 7:18–21, 7:23– 8:1, 8:3–10, 8:12–14, 8:24– 25, 10:18–11:12, 13:18–20, 13:25–14:7, 14:21–15:3, 15:7–8, 15:19–24, 16:13–19, 24:2–10. Still,

Judge Jackson (correctly) held that that Defendants were free to argue that those claims were preempted, or were actually FLSA claims. If the claim is a South Carolina law claim, however, it is not settled. *Gagliastre*, Order, Dkt 287, PAGEID 4355. Defendants appealed the order to the Fourth Circuit Court of Appeals, and Plaintiffs filed a cross-appeal on the failure of the court to award sanctions based on Defendants' lack of candor to the Court.

On October 9, 2019, Plaintiffs renewed their motion for leave to file a First Amended Complaint in *Tarry*. Dkt. 45. On October 23, 2019, Defendants filed a brief in opposition to Plaintiffs' renewed motion for leave to file a First Amended Complaint, again mostly arguing that the claims had been settled or were not *really* South Carolina state law claims. Dkt. 48. The Court granted Plaintiffs' renewed motion on November 13, 2019, and the First Amended Complaint was filed. Dkt. 54.

On November 18, 2019, Defendants filed this Motion to Dismiss in *Tarry* alleging for numerous reasons, including that the *Gagliastre* settlement settled all state law claims and/or there are no available state law claims.

### 3. Allegations in the *Tarry* First Amended Complaint

#### 3.1. Plaintiffs' SCPWA Allegations

The First Amended Complaint (Dkt. 54) alleges the following violations of South Carolina law:

134. Defendants illegally deducted amounts from the wages of Plaintiffs and the Rule 23 Class without providing the notice required by S.C. Code Ann. §41-10-30(A). These deductions without proper notice include the following:

a. Defendants deducted, withheld and/or diverted servers' tip money.

    b.   Defendants deducted servers' wage money while purporting to pay servers a "tipped minimum wage."

    c.   Defendants deducted money from servers' tips and/or wages by requiring servers to compensate Defendants' silverware rollers.

    d.   Defendants deducted money from servers' wages to pay for uniform shirts.

135. Plaintiffs and the Rule 23 Class did not receive proper notice of any of the deductions taken from their wages as required by S.C. Code Ann. § 41-10-40(C).

136. Defendants diverted or withheld portions of the wages and/or tips of Plaintiffs and the Rule 23 Class.

137. Defendants did not notify Plaintiffs and the Rule 23 Class of the actual wage they paid Plaintiffs and the Rule 23 Class as required by S.C. Code 41-10-30(A).

138. By virtue of any or all of the statutory violations described in this Amended Complaint, Defendants did not pay Plaintiffs and the Rule 23 Class all wages due as required by S.C. Code Ann. §40-10-40(D).

141. Defendants acted with reckless disregard as to whether their compensation policies with respect to servers complied with state wage laws.

In addition to the above allegations, Plaintiffs included additional factual context to support their claims.[4]

---

[4] Defendants repeatedly reference Plaintiffs' sample math in Paragraph 149 of the First Amended Complaint. Defendants appear to do this in order to minimize Plaintiffs' damages. The sample math is just that, sample math. It is not a description of what happened each night for every server. It is simply to show that, under Defendants' policies, Plaintiffs had to pay money to Defendants based not on tips, but on total sales.

### 3.2.    Relevant South Carolina Code Ann. Sections

Section 41-10-40 of the laws of South Carolina provides:

(A) Every employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday.

\*\*\*

(C) An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of §41-10-30.

(D) Every employer in the State shall pay all wages due at the time and place designated as required by subsection (A) of §41-10-30.

Section 41-10-30(A) provides that

Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs….

Section 41-10-80 provides that

(B) Any employer who violates the provisions of Section 41-10-40 must be assessed a civil penalty of not more than one hundred dollars for each violation. Each failure to pay constitutes a separate offense.

(C) In case of any failure to pay wages due to any employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages became due.

### 3.3.    Plaintiffs' SCPWA Claims

With the above facts and law in mind, Plaintiffs' claims are straightforward.

First, Plaintiffs allege that Defendants deducted various moneys from their wages (tips, uniform money, money for silverware rollers, etc.) and did not provide the written notice required by Section 41-10-40(C) and described in 41-10-30(A). Section 41-10-40(C) forbids Defendants

9

from deducting money without providing proper written notice at the time of hiring. Also under Section 41-10-40(C), Plaintiffs allege that these moneys were withheld or diverted from them. Section 41-10-80(C) gives Plaintiffs a private right of action to assert recover the unlawfully deducted, withheld, or diverted wages and tips.

Second, Plaintiffs allege that Defendants did not pay all wages due by the relevant payday for those wages. *See* 41-10-40(A) and (D). Section 41-10-80(C) gives Plaintiffs a private right of action to assert these claims.

### 4. Argument

#### 4.1. Motion to Dismiss Standard

The motion to dismiss standard is well established: Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) (internal quotations omitted)). Specifically, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

The court's review is limited to the "well-pled facts in the complaint, which it must view in the light most favorable to the plaintiff." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Brockington v. Boykins,* 637 F.3d 503, 505 (4th Cir.2011). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Crosslin v. Sears Auto. & Tire*, No. 1:14-cv-00030, 2014 WL 3673326, at *1 (W.D. Va. July 23, 2014) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

### 4.2.     Plaintiffs have alleged facts sufficient to state a claim under the SCPWA.

Defendants' first argument is that "the Plaintiffs' FAC fails to state a claim under the SCPWA because the conduct it describes falls under the FLSA, not the SCPWA." Dkt. 56-1 at 11. Courts in this district have consistently held that an employer's pay practices can give rise to both FLSA claims *and* separate, viable SCPWA claims, even if the claims have some overlapping damages. It is an unremarkable concept that a particular set of a defendant's activities can generate liability under multiple statutes.

Just last month, Judge David Norton explained this principle in a case centering around unpaid overtime wages:

> Courts in the Fourth Circuit have found that where the SCWPA provides for relief broader than or distinct from that provided for by the FLSA, claims under the former are not preempted by the latter. In *Meller v. Wings Over Spartanburg, LLC*, the court found that the plaintiffs' claim to recover withheld tips in excess of the minimum wage under the SCPWA was not preempted by the FLSA. 2016 WL 1089382, at *3 (D.S.C. Mar. 21, 2016). The court rested its decision on the fact that the FLSA did not guarantee the substantive rights implicated by such a claim— namely, the plaintiffs' entitlement to their tips in excess of the FLSA's minimum wage. *Id.* Other courts have denied motions to dismiss SCWPA claims under similar analyses. *See Foster v. M5 Hosp. Grp., LLC*, 2015 WL 5024404, at *5 (D.S.C. Aug. 24, 2015) (finding that "[a] cause of action under the state wage statute is separate and distinct from the FLSA claims" because, unlike the FLSA, that statute "is not limited to controversies involving minimum wage and overtime but applies to all wages due, and the plaintiff's claim is based on lack of written notice of deductions"); *Spallone v. SOHO Univ., Inc.*, 2015 WL 5098154, at *5 (D.S.C. Aug. 31, 2015) (same).
>
> Further, the district court in *Xue v. J&B Spartanburg LLC*, found that a plaintiff's right to treble damages under the SCPWA made the relief sought broader than that provided for by the FLSA. 2016 WL 3017223, at *2 (D.S.C. May 26, 2016). The court also found that a claim under the SCWPA's notice requirements is distinct from an FLSA claim. *Id.* There, the court noted that "the FLSA does not prevent states from creating a parallel regulatory scheme that provides additional protections for employees." *Id.* at *2 (citing 29 U.S.C. § 218(a)). In considering SCPWA claims very similar to the ones at issue here, the court stated:
>
> > the SCPWA both creates a right and a means of enforcing that right that provides additional remedies not available under the FLSA, such as the

> employee's recovery for three times the amount owed, plus costs and reasonable attorney's fees. S.C. Code Ann. § 41-10-80. Furthermore, Plaintiffs' SCPWA claims are separate and distinct from their FLSA claim because they are seeking unpaid overtime wage payments that are based upon an agreed-upon hourly rate, pursuant to their fixed monthly salary, which is higher than the federal minimum wage rate.... Moreover, several of Plaintiffs' SCPWA claims are unrelated to their overtime wage claims, specifically their allegations of Defendants' failure to provide Plaintiffs with the proper notice at the time of hiring, a timely written notice of any changes in their terms of employment, and wage statements for each pay period.
>
> *Id.*, at *2.

*Wright v. Waste Pro USA, Inc*., No. 2:17-cv-02654, 2019 WL 5896516, **7-8 (D. S.C. Nov. 12, 2019).

In *Carbone v. Zen 333, Inc.*, the court analyzed a similar case involving restaurant employees. 2016 WL 7383920 (D.S.C. December 21, 2016). The employees alleged that "employee tip pool contributions were …deposited into a general operating account, which was used to pay hourly wages to non-tipped employees." *Id.* at *2. As a result, the restaurant workers alleged violations of FLSA's minimum wage and unpaid overtime provisions and violations of the SCPWA. Defendants filed a motion to dismiss under Rule 12(b)(6), arguing in part that the SCPWA claim was "dependent on a violation of the FLSA and therefore preempted." *Carbone*, 2016 WL 7383920, *3.

In holding that the FLSA does not preempt the SCPWA, Judge Norton rejected the restaurant's reasoning that the SCPWA requires employees first to prove an FLSA violation. *Id.* at *5. Instead, the court concluded that the SCPWA "prohibits withholding or diverting wages, except when such actions are taken pursuant to some other federal or state law, or when employers provide proper notice of such actions to their employees." *Id.* The court then referenced a number of other cases in the District of South Carolina, concluding that "these courts all allowed the

plaintiffs' SCPWA claims to go forward, indicating that they did not read the SCPWA to require proof of an FLSA violation. Therefore, the court finds that plaintiffs' SCPWA claim is not preempted by the FLSA." *Id.* at *6.

In *Spallone,* the plaintiff alleged violation of the FLSA and of the SCPWA for deducting a portion of his tips for back of house staff who are not employees who normally receive tips. No. 4:15-cv-1622, 2015 WL5098154 (D.S.C. Aug. 31, 2015). The court denied the defendant's motion to dismiss the SCPWA claims. "The FLSA provides a floor for minimum wage and overtime and contains a savings clause allowing states to enact wage laws relating to minimum wage and overtime which are more generous to employees than the FLSA." *Id.* at *3. Judge R. Bryan Harwell made clear that the FLSA and SCPWA are different causes of action:

> A cause of action under the state wage statute is separate and distinct from the FLSA claims. The South Carolina Wage Payment statute is broader than the FLSA in that it is not limited to controversies involving minimum wage and overtime but applies to all wages due, and the plaintiff's claim is based on lack of written notice of deductions.

*Id.* at *5. The court then noted that two other states within the Fourth Circuit, North Carolina and Maryland, also have state laws that provide partially overlapping, but ultimate different, claims than the FLSA.

> While courts have held that state laws cannot enlarge the available remedy for FLSA violations, there is nothing in FLSA preventing states from creating a parallel regulatory scheme that provides additional protections of employees. Ultimately Plaintiffs will not be able to recover twice for the same injury, but they may be entitled to the additional types of relief afforded by the [state law].

*Spallone,* 2015 WL5098154, at *5 (quoting *Butler v. DirectSat USA, LLC,* 800 F. Supp. 2d 662, 672 (D. Md. 2011) (referring to Maryland wage and hour law)).

As described in Section 3.3, Plaintiffs alleged violations of state law that are independent of FLSA minimum wage violations. Thus, Defendants' Motion on this point should be denied.

### 4.3. The SCWPA grants Plaintiffs a private cause of action for all of their claims in this case.

Defendants claim that Plaintiffs are making a claim for violation of the notice requirements of §41-10-30 alone, which, they claim, does not provide for a private cause of action. Dkt. 56-1, p. 12. Defendants misinterpret the Plaintiffs' claim.

Plaintiffs are making a claim pursuant to §41-10-40(C) which provides:

> An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of §41-10-30.

Plaintiffs seek damages because Defendants, by failing to comply with §41-10-30, were never entitled to deduct, withhold, or divert money from servers in the first place.

Section 41-10-80 provides for damages and a private cause of action for violations of §41-10-40. Plaintiffs' First Amended Complaint references §41-10-30 because §41-10-40 references §41-10-30. Plaintiffs seek damages for the violations of §41-10-40, not §41-10-30. Thus, Defendants' argument that Plaintiffs lack a private cause of action is without merit.

### 4.4. Plaintiffs do not lose their claims by virtue of working for an employer that continues to violate the SCPWA.

Defendants next seem to take the position that, since Defendants paid Plaintiffs according to the illegal policies described in the First Amended Complaint, Plaintiffs must have been aware of and accepting of the terms of their employment, and therefore, Plaintiffs have no claim for unlawful deductions. Dkt. 56-1, p. 13 (claiming that Plaintiffs "describe a number of pay-related policies" but do not allege "that any Plaintiff was paid anything less than what they were due under those same policies."). This "stop hitting yourself" argument does not comport with the SCPWA. Employers cannot escape liability because their employees continue to work under illegal and/or

never-explained compensation terms. To hold otherwise eviscerates the SCPWA's protections and is contrary to the statute's text.

As a threshold matter, Defendants misrepresent the allegations in the First Amended Complaint by claiming that Plaintiffs understood and agreed to the terms of their employment. Dkt. 56-1, p. 16. On the contrary, Plaintiffs' FAC does not allege that an employment agreement or meeting of the minds regarding the terms of their employment existed between the parties. That is precisely because Defendants never notified the servers of the accurate terms of their employment. Dkt. 54, ¶¶ 75-86. In fact, to the extent the servers' employment terms were explained to them, they were explained inaccurately.[5] For example, Defendants concealed that they themselves were retaining a portion of the tip-out money. Simply because Plaintiffs' Complaint explains the illegal circumstances of their employment does not mean an employment agreement existed, or that Plaintiffs "agreed" to those illegal employment terms.

Defendants' own cases recognize that an employee does not have to allege that their employer violated its own employment policy in order to state a claim under the SCPWA. Dkt. 56-1, p. 14 (citing *Williams v. MKKM, Inc.*, No. 2:14-cv-04509, 2016 WL 284621, *3 (D. S.C. Jan. 25, 2016) ("Defendants do not cite a single case in which a court dismissed a SCPWA claim because the plaintiff failed to state that the defendants conduct violated a specific policy or employment contract provision. Further, the court's research did not reveal such a case.")).

The cases relied on by Defendants either did not involve the SCPWA, did not involve a deduction, diversion, or withholding from an employees' compensation, or both. Defendants

---

[5] As this Court is aware, Plaintiffs here have the unique benefit of having already gone through the discovery process in a case involving some of the same facts as this case, so they are able to allege their understanding of the terms of their employment with more specificity than they had when they were employed by Defendants. This does not mean they knew of or agreed to the terms of their employment when they were working.

ignore the substantial case law arising under the SCPWA, and cite a number of cases that involve common law breach of contract, fraud, or unjust enrichment claims. Dkt. 56-1, p. 14. For example, *Facelli v. Se Mktg. Co.* involved a jury verdict on a breach of employment contract claim, wherein it was found that the employer modified the commission rate by oral and written communication to the employee. 284 S.C. 449, 327 S.E. 2d 338 (1985). The case was decided in 1985, the year before the SCPWA was passed into law. *Finney v. Lincare, Inc*. likewise involved an employment contract claim that did not assert any claims under the SCPWA. No. 2:11-cv-1400, 2012 WL 1533139 (D. S.C. May 1, 2012); *see also Wadford v. Hartford Fire Ins. Co*., No. 3:87-cv-2872-15, 1988 WL 492127 (D.S.C. Aug. 11, 1988) (employment contract case that did not raise SCPWA claims).

The primary SCPWA case Defendants cite for this proposition does not involve any claim for improper deductions, or for wrongfully "withheld or diverted" compensation, but only a claim that the terms of employment were not made in writing according to § 41-10-30, as addressed in the section above. *See* Dkt. 56-1, p. 14, *citing Gould v. Worldwide Apparel, LLC*, 2019 WL 3216893 (Ct. Appl S.C. 2019). First, *Gould* states that "[t]his opinion has no precedential value. It should not be cited or relied on as precedent in any proceeding except as provided by Rule 268(d)(2), SCACR." Rule 268(d)(2) states in turn that this opinion "should not be cited except in proceedings in which they are directly involved." Second, *Gould* involved an employee who had been informed by text message and other communications that the terms of his employment had changed from the previously-verbally-agreed $10,000 per month. *Gould*, 2019 WL 3216893, *1. But the plaintiff later claimed that the change was void because it did not comply with § 41-10-30. *Id*. Unlike the present case, the *Gould* court never considered whether the plaintiff had stated a claim under § 41-10-40(C) or (D). Further, unlike *Gould*, the servers here were *never* notified of

the accurate terms of their employment, whether as required by § 41-10-30 or otherwise. Defendants' other case referring to the SCPWA involved firefighters who, unlike the servers here, had the terms of their employment clearly enumerated in county ordinances. *Visco v. Aiken County*, S.C., 974 F.Supp.2d 908, 920 (D.S.C. Sept. 26, 2013).

Next, Defendants argue that Plaintiffs' allegations do not involve "deductions" at all. Dkt. 56-1, p. 17. For the proposition, Defendants rely on a case where the South Carolina Supreme Court explains the broad intended scope of § 41-10-40(C). *See* Dkt. 56-1, p. 17 (citing *Mathis v. Brown & Brown of South Carolina, Inc.*, 389 S.C. 299 (2010)). *Mathis* explains that the employer cannot escape liability for withholding or diverting an employee's wages simply because they notified the employee that they would be withholding or diverting from their wages. *Id*. at 317. Contrary to Defendants' suggestion, *Mathis* holds that employers can avoid liability under the SCPWA only for certain "deductions," if properly claimed pursuant to §41-10-30 and not violative of any other law, but are not absolved for "withholding" or "diverting" wages because they gave the employee a head's up. *Id*. If anything, *Mathis* supports Plaintiffs' position that Defendants' policy result in improper deductions, withholdings, and/or diversions of the servers' wages.

If, as Defendants claim, the notice provision of the SCPWA were satisfied the first time a paycheck with a paystub showing deductions was provided to an individual, there would never be violations of §40-10-40 after the first pay period. That is an illogical reading of the statute. It also contrary to the statute's plain language that requires notice to be given "at the time of hiring." S.C. 41-10-30(A). The fact that the employees continued to work even though Defendants unlawfully withheld tips and wages did not modify Defendants' obligation to give notice of the deductions.

### 4.5.    The FLSA does not preempt Plaintiffs' claims.

On one hand, Defendants argue that there are no SCPWA claims in this case. But, on the other, Defendants claim that the SCPWA claims exist, but they are "barred by obstacle preemption." Because these are two different (and opposing) concepts, Plaintiff will address preemption separately.

Obstacle preemption exists where "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007). This argument, too, has been tried and rejected by courts in this district. *See, e.g., Spallone,* 2015 WL5098154, at *5 (holding that tipped employees' claims were not preempted).[6] "The FLSA provides a floor for minimum wage and overtime and contains a savings clause allowing states to enact wage laws relating to minimum wage and overtime which are more generous to employees than the FLSA." *Id.*

Plaintiffs' claims arise from rights that are separate and independent from those in the FLSA. Specifically, Plaintiffs claim that Defendants withheld, diverted, and/or deducted from Plaintiffs' wages and tips without providing the required notice to do so, and Plaintiffs claim that Defendants did not pay all wages due to Plaintiffs when required by the SCPWA. *See supra*, Section 3. None of these claims exist under the FLSA. This alone defeats Defendants' Motion to Dismiss on this point; the rights under SCPWA are independent and not preempted by the FLSA.

But, even if Plaintiffs sought *only* different damages, Plaintiffs' claims are not preempted. Judge Norton confirmed that the different types of damages available under the SCPWA are

---

[6] Unlike the primarily overtime cases cited by Defendants, *Spallone* involved factual allegations that are very similar to the claims made by Plaintiffs here. *Spallone*, 2015 WL5098154, **3-4.

sufficient, by themselves, to allow for a separate claim under the SCPWA. The court determined that

> To the extent that plaintiffs' SCWPA claims seek wages equal to or less than the amount recoverable under the FLSA, those SCWPA claims would be duplicative of their claims under the FLSA. However, plaintiffs seek treble damages for these SCWPA claims, which is broader relief than the relief provided for under the FLSA. Therefore, plaintiffs' unpaid wage claim under the SCWPA is not duplicative of their FLSA claims to the extent that they seek treble damages. Because plaintiffs are seeking relief under the SCWPA that is either broader than or distinct from that which is recoverable under the FLSA, their SCWPA claims are not preempted.

*Wright,* 2019 WL 5896516, *9.

Some of the confusion as to whether SCPWA claims are preempted arises from a misinterpretation of the Fourth Circuit's decision in *Anderson v. Sara Lee Corp*. In that case, the court concluded that common law contract-style claims—not state statutory claims—were preempted by the FLSA. As the *Spallone* court explained, the Fourth Circuit "also stated that the plaintiffs in *Anderson* did not contend that any North Carolina law 'entitles them to unpaid wages.'" *Spallone,* 2015 WL 5098154, *4 (quoting *Anderson*, 508 F.3d at 193). *Spallone* went on to explain why *Anderson* does not control claims asserted under the SCPWA:

> *Anderson* did involve state common law claims which relied on the FLSA for the source of the rights involved, unlike a claim based on the Wage Payment Act which creates its own rights and remedies. In *Anderson,* the Fourth Circuit distinguished the situation where a state statute entitled an employee to unpaid wages. The South Carolina Wage Payment Act requires employers to notify employees in writing of the wages agreed upon and the deductions that will be made from the wages. S.C.Code Ann. § 41–10–30(A). It further provides in Section 41–10–80 for recovery of "an amount equal to three times the full amount of the unpaid wages" in addition to other relief. In the case at bar, the plaintiff's state law claim is based upon a wage payment statute, and the source of the plaintiff's rights and remedies is that statute. The plaintiff has alleged in his complaint that tips constitute wages and that the employer made *deductions from his wages for the tip pool without providing written notice of these deductions.* Plaintiffs have also pled that they suffered damages from the same. *See Bennett v. Lambroukos*, 303 S.C. 481, 401 S.E.2d 428, 429–430 (1991) (Action to recover unpaid wages in which the employer deducted monies from the plaintiff's paycheck for breakage without

19

written notification; court noted that the provisions of the Wage Act are not limited to employers who are subject to the federal minimum wage law).

*Id*. at *5. The SCPWA itself entitles employees to unpaid wages for a three-year period, in addition to treble damages for Defendants' failure to pay agreed wages, failure to provide proper notice of deductions, and diverting/withholding employees' wages or compensation. S.C. Code Ann. §§ 41-10-10, *et seq*. Unlike the plaintiffs in *Anderson*, Plaintiffs here have an independent statutory basis for relief.

Defendants are correct that one of Plaintiffs' claims—Plaintiffs' "payday" claim—seeks relief based on Defendants' failure to timely pay "all wages due", as required by § 41-10-40(D), and that the "wages due" are, in part, statutorily required minimum wages. For this reason, Defendants claim Plaintiffs' "payday" claim is preempted by the FLSA. However, *Spallone* addressed this argument as well. *Spallone,* 2015 WL 5098154, *5.

The SCPWA, like many similar state statutes, creates an independent claim that allows employees to recover wages due or earned under an employment arrangement. *See, e.g., Spallone*, 2015 WL 5098154, *5; *Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011) ("Where, as here, the court has found a violation of the FLSA for improper deductions, be it actual or *de facto*, defendants are also liable for violation of the NCWHA for failing to pay the promised wage."); *Craig v. Bridges Bros*., 823 F.3d 382, 385, n.2 (6th Cir. 2016) (finding a similar payday statute, O.R.C. § 4113.15, "rises and falls" with the underlying FLSA violation); *Parks v. Central USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, n. 13 (S.D. Ohio Sept. 29, 2019) ("The Ohio Prompt Pay Act also entitles Plaintiffs to the wages they are due under the FLSA. Ohio Rev. Code § 4113.15(A) ("Every employer doing business in this state shall...., pay all its employees the wages earned by them...."); *Martinez–Hernandez v. Butterball, LLC,* 578 F.Supp.2d 816, 819–20 (E.D.N.C.2008) (finding North Carolina Wage and Hour Act

was not preempted by FLSA); *Butler v. DirectSat USA, LLC,* 800 F.Supp.2d 662 (D.Md.2011) ("While courts have held that state laws cannot enlarge the available remedy for FLSA violations, there is nothing in FLSA preventing states from creating a parallel regulatory scheme that provides additional protections for employees. Ultimately Plaintiffs will not be able to recover twice for the same injury, but they may be entitled to the additional types of relief afforded by the MWHL.").

Plaintiffs seek the money that Plaintiffs and the Rule 23 class members are entitled to *under the SCWPA*. Plaintiffs' Complaint seeks no other damages or award. For those Plaintiffs and class members who received money from the *Gagliastre* settlement, to the extent that the "wage" portion of the settlement overlaps with any award of wages in this case, the amount already paid for violation of the FLSA could be used as a setoff, but this would need to be determined if and when there is an award in this case. Likewise, Defendants would need to show that the two awards do, in fact, cover the same set of wages. Either way, Plaintiffs' SCWPA claims are not preempted. And, even if a small fraction of the class members in this case are subject to a partial setoff, the vast majority of class members took no part in *Gagliastre* and are entitled to their full damages available in this lawsuit.

### 4.6.     Plaintiffs' Claims are Not Barred by *Res Judicata*

Defendants are also wrong that Plaintiffs' claims are barred by *res judicata*. "To establish a *res judicata* defense, a party must establish: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997) (internal quotation marks omitted), *cert. denied,* 523 U.S. 1072, 118 S. Ct. 1512, 140 L.Ed.2d 666 (1998).

With regard to the first prong, there was no final judgment on the merits of the SCPWA claims in a prior suit. In fact, at Defendants' request, the court declined to exercise supplemental jurisdiction over the South Carolina state law claims in *Gagliastre*.

As to the second prong, there *was* identity of the cause of action in the original *Gagliastre* complaint and the *Tarry* First Amended Complaint. However, the *Gagliastre* court declined to exercise supplemental jurisdiction over the SCPWA claim and instructed Plaintiffs to proceed with that claim in state court. At that point, the two cases no longer included the same SCPWA cause of action. The settlement agreement in *Gagliastre* specifically excluded the state law claims.

Last, while the named parties in the two cases are the same, the putative Rule 23 class in *Tarry* contains hundreds of workers who were not part of the *Gagliastre* case.

This lawsuit is not barred by *res judicata*.

### 4.7.    Plaintiffs' claims are not barred by the doctrine of accord and satisfaction.

Defendants also state that "the instant suit is barred facially by…the doctrine of accord and satisfaction." Dkt. 56-1 at 2. A case cannot be "facially barred" by accord and satisfaction because "[a]ccord and satisfaction is an affirmative defense which must be pleaded and proved. Rule 8(c), SCRCP…." *South Carolina Farm Bureau Mutual Insurance Company v. Kelly,* 345 S.C. 232, 239 (C.App. S. C. 2001) *cert. granted* Nov., 29, 2001. The affirmative defense of accord and satisfaction has factual elements that must be proven, including whether there was a meeting of the minds on a particular issue. *See, e.g., Wright v. Bank of Am.*, NA, No. 5:13-cv-02913, 2014 WL 3565822, at *4 (D.S.C. July 18, 2014). In other words, this is not an affirmative defense that can be decided as a matter of law. Defendants have failed to plead, let alone prove that there is an accord and satisfaction.

In any event, Plaintiffs' claims under the SCPWA have not been satisfied by the *Gagliastre* settlement, but were instead expressly excluded from the release provided in *Gagliastre*. Given that Judge Jackson clearly and repeatedly stated that the Agreement does not resolve SCPWA claims, there can be no accord and satisfaction for those claims. *See, e.g.*, Enforcement Transcript, Ex. 1, 7:18–21, 7:23– 8:1, 8:3–10, 8:12–14, 8:24–25, 10:18–11:12, 13:18–20, 13:25–14:7, 14:21– 15:3, 15:7–8, 15:19–24, 16:13–19, 24:2–10; *Gagliastre*, Order, Dkt. 287.

### 4.8.    Plaintiffs' Claims are Not Barred by the Statute of Limitations

The Defendants argue that "[t]he FLSA claims that the Plaintiffs did not previously assert under the SCPWA, but labeled as SCPWA claims for the first time on November 2, 2018, are time-barred because the only violations conceivably presented in the facts alleged occurred more than three years prior to the commencement of this suit." Dkt. 56-1 at 19. However, Plaintiffs tolled the statute of limitations for the entire class when they first filed their SCPWA claims under both the judicial tolling doctrine enunciated in *American Pipe* and 28 U.S.C. § 1367(d).

Last year, in *China Agritech, Inc. v. Resh,* the Supreme Court reiterated that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. 138 S. Ct. 1800 (2018) (citing *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S. Ct. 756, 38 L.Ed.2d 713 (1974)). Plaintiffs filed their SCPWA on May 19, 2017.

In addition, the United States Code provides for tolling on any state claim filed pursuant to a claim of supplemental jurisdiction but later dismissed, until 30 days after the dismissal. 28 U.S.C. § 1367(d). The Supreme Court has also recognized that litigants should not be punished by the time passing while the claim was pending in federal court:

> Thus, some claims asserted under § 1367(a) will be dismissed because the district court declines to exercise jurisdiction over them and, if they are to be pursued, must be re-filed in state court. To prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal

> court, § 1367(d) provides a tolling rule that must be applied by state courts: 'The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless state law provides for a longer tolling period.'

*Jink*s v. Richland County, S.C., 538 U.S. 456, 458, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003).

Only "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under American Pipe and are barred by the statute of limitations." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Here, Defendants cannot claim that they were not on notice of Plaintiffs' claims under the SCPWA or of the factual allegations made in the First Amended Complaint. Plaintiffs' original complaint in *Gagliastre*, filed on May 19, 2017, asserted a single claim under the SCPWA, just as Plaintiffs' First Amended Complaint in this case does.

The original complaint asserted substantially the same facts asserted in this case and sought "damages as a result of Defendants' failure to comply with S.C. Code Ann. § 41-10-10, *et seq*." *Gagliastre*, ¶ 243. The original complaint's SCPWA cause of action incorporated by reference all of the other allegations made in the complaint. *Gagliatre*, Dkt. 1, ¶ 270. The original *Gagliastre* complaint also contained classwide allegations including an allegation, for example, that "[s]ervers regularly had to pay either 2% or 3% of their total sales for a shift to the restaurant out of their tips." *Gagliastre*, Dkt. 1, ¶ 182. Plaintiffs alleged that "Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with S.C. Code Ann. §41-10-10, *et seq.*" *Id*. at ¶ 243. Count Three alleges that "Defendants illegally deducted amounts from the wages of Plaintiffs and the Rule 23 Class without providing proper notice as required by S.C. Code Ann. §41-10-30(A). *Id*. at ¶ 274. "Specifically, Defendants required Plaintiffs and the Rule 23 Class to pay 3% of the sales they obtained out of their tips

directly to Defendants." *Id*. at ¶ 275. "[P]laintiffs and the Rule 23 Class are entitled to the unlawfully deducted tips, treble damages, attorneys' fees, costs and injunctive relief." *Id*. at ¶ 278. The prayer sought an award of unlawfully deducted tips due under the SCPWA and treble damages under the SCPWA.

Defendants' cited support involves cases where the second complaint asserted causes of action that were not asserted in the first case. *In re Vertrue Marketing and Sales Practices Litigation*, cited by Defendants, holds that the statute of limitations was not preserved on a cause of action (specifically, a RICO claim) that was not previously asserted in the prior case. 712 F. Supp. 2d 703, 718 (N.D. Ohio Apr. 16, 2010); *see also* Dkt. 56-1, p. 19-20 (citing *Miller v. Am. Int'l Grp., Inc*., No. 3:04-cv-1417, 2005 WL 1131110, *7 (N.D. Tex. May 9, 2005) (finding no tolling because tortious interference claim not asserted in previous case); *Bradley v. Franklin Collection Serv., Inc*., No. 5:10-cv-1537, 2011 WL 13134961, *13 (N.D. Ala. Mar. 24, 2011) (no tolling applies because the fraud claim was not alleged in the first case, only fraudulent conduct); *Scott v. State Dept. of Transp*., 2016 WL 3912470, *4 (Conn. Super. Ct. June 13, 2016) (holding that 28 U.S.C. § 1367(d) does not preserve the statute of limitations for federal claims dismissed from federal court)).

Defendants cannot possibly claim that they were unaware that Plaintiffs sought to pursue a Rule 23 class action asserting claims under the SCPWA based on the facts alleged in the original complaint. In fact, a big part of Defendants' motion to dismiss is based on the idea that all of the FLSA and South Carolina claims are the same. Although they are *not* the same claims, it is a little difficult to say, in light of Defendants' briefing, that Defendants did not have notice of the SCPWA claims.

As a result, the statute of limitations was tolled from May 19, 2017 until the Court declined to accept supplemental jurisdiction on October 4, 2018. Since Plaintiffs then re-filed their state claims within 30 days, the SCPWA claims cover the period from May 19, 2014 (three years prior to the filing of the original complaint) to present. 28 U.S.C. § 1367(d).

To the extent relevant, Defendants agree that, at a minimum, Plaintiff Zayneeva's claims are not time barred. Defendants try to avoid this result by claiming that Plaintiff Zayneeva "agreed" to work under illegal pay practices after her first week of work, thereby somehow letting the statute of limitations run. The absurd concept that employees can "agree" to work under illegal pay practices and thereby waive their rights under the SCPWA is dealt with above. Thus, even if tolling did not apply, and it does, Plaintiff Zayneeva's claims are preserved.

**5. Conclusion**

Plaintiffs' First Amended Complaint sufficiently states a claim for relief for Plaintiffs and the Rule 23 class that they seek to represent against Defendants under SCPWA. Accordingly, Plaintiffs ask the Court to deny Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Glenn V. Ohanesian
Glenn V. Ohanesian
Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Telephone: 843-626-7193
Facsimile: 843-492-5164
Email: OhanesianLawFirm@cs.com

Andrew Biller (*pro hac vice*)
Trial Counsel
Andrew Kimble (*pro hac vice*)
Philip Krzeski (*pro hac vice*)
Biller & Kimble, LLC

3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-202-0710 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)
(pkrzeski@billerkimble.com)

C. Ryan Morgan (*pro hac vice*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32802-4979
407 420-1414 (Phone)
407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*pro hac vice*
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400
Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed through the Court's

ECF system, notice of which was sent to all counsel of record.


/s/Glenn V. Ohanesian

 Glenn V. Ohanesian
Law Offices of Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Email: OhanesianLawFirm@cs.com