In the United States District Court
for the District of South Carolina
Florence Division

| | |
|---|---|
| Zachary Tarry, *et al.*, | |
| *On behalf of themselves and those similarly situated*, | Case No. 4:19-cv-800-JDIII |
| Plaintiffs, | Judge Joseph Dawson, III |
| v. | |
| Captain George's of South Carolina, LP, *et al.*, | |
| Defendants. | |

- *and* -

| | |
|---|---|
| Dianna Frykenberg, | |
| *On behalf of herself and those similarly situated*, | Case No. 4:19-cv-2971-JDIII |
| Plaintiff, | Judge Joseph Dawson, III |
| v. | |
| Captain George's of South Carolina, LP, *et al.*, | |
| Defendants. | |

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT

Plaintiffs ask the Court to grant final approval to their Rule 23 class action settlement. At this stage, the Court has granted preliminary approval, notice of the settlement has been

1

distributed, and no objections have been received. As described herein, the settlement is a fair, reasonable, and adequate resolution of this litigation and warrants the Court's approval.

Plaintiffs ask the Court to:

(1) grant final approval to the settlement agreement;

(2) approve Class Counsel's requests for fees and costs;

(3) approve the incentive awards for the named plaintiffs.

The arguments in support of Plaintiffs' Motion are more fully set forth in the attached memorandum. Plaintiffs also submit with this Motion a Proposed Order.

Respectfully submitted,

/s/Glenn V. Ohanesian
Glenn V. Ohanesian
Law Offices of Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Email: OhanesianLawFirm@cs.com

Andrew R. Biller (*pro hace vice*)
Andrew P. Kimble (*pro hace vice*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-715-8711 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)

C. Ryan Morgan (*pro hac vice*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32802-4979
407 420-1414 (Phone)407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*pro hac vice*)
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400

Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

*Counsel for Plaintiffs*

MEMORANDUM IN SUPPORT PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT

**1. Introduction**

The settlement agreement before the Court resolves Plaintiffs' claims against Defendants raised in *Tarry v. CGSC, LP, et al.*, Case No. 4:19-cv-800 (D.S.C.). This settlement is part of a global resolution that includes *Frykenberg v. CGSC, LP, et al.*, No. 4:19-cv-2971 (D.S.C.) and the appeals arising from *Gagliastre v. CGSC, LP* pending in the Fourth Circuit, Nos. 19-2170 and 19-2213.

On February 18, 2022, the Court granted preliminary approval of the portion of the settlement related to *Tarry* and final approval of the portion related to *Frykenberg*. *See* Order Doc. 141. Plaintiffs now ask the Court to grant final approval of the *Tarry* settlement portion. *See* Settlement Agreement attached as Exhibit 1.

**2. Background of Lawsuit and Claims**

**2.1. Litigation Overview**

The parties have been litigating against each other through three separate lawsuits since April of 2017. The lawsuits are (1) *Tarry, et al., v. CGSC, LP, et al.*, Case No. 4:19-cv-0800 (D.S.C.) ("*Tarry*"); (2) *Frykenberg v. CGSC, LP, et al.*, Case No. 4:19-cv-2971 (D.S.C.) ("*Frykenberg*"); and (3) *Gagliastre v. CGSC, LP, et al.*, , Nos. 19-2170 and 19-2213 (4th Cir. 2019) ("*Gagliastre*").[1] The actions center on Plaintiffs' claims that Defendants' pay practices violated the Fair Labor Standards Act and state law.

---

[1] The *Gagliastre* matter is an appeal of the Court's decision in the underlying district court case *Gagliastre v. Captain George's of South Carolina, LP*, No. 2:17-cv-379 (E.D. Va.). Its resolution does not require court approval, but the parties have included it in their global settlement.

The District Court in Virginia granted final settlement approval in *Gagliastre*. *Gagliastre*, 2:17-cv-379, Doc. 269 (D. Va. Apr. 29, 2019). Only appeals remain, which will be resolved by the global settlement agreement. This Court granted final settlement approval in *Frykenberg*. Doc. 141. Thus, only the claims in *Tarry* remain at issue. The Settlement resolves those claims and ends the remainder of the litigation between the parties.

At this point, the Court has already granted preliminary approval of the *Tarry* Settlement. Doc. 141. Plaintiffs have sent notice of the Settlement to interested class members. No class member has objected to the settlement or excluded themselves. All that remains is the Court's final review and approval.

**2.2. Overview of the *Tarry* Claims and Litigation**

Plaintiffs Zachary Tarry, Olga Zayneeva, and Christopher Gagliastre are former servers at Captain George's Seafood Restaurant located in Myrtle Beach, South Carolina. Plaintiffs filed this matter on October 18, 2019. Doc. 1.

Plaintiffs assert that Defendants illegally withheld and/or diverted tips in violation of S.C. Code. Ann. § 41-10-40(C), which in pertinent part, provides, "[a]n employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law." *Id*. Plaintiffs allege that Defendants subjected their servers to this unlawful treatment in five separate ways.

First, Plaintiffs alleged that Defendants illegally withheld servers' tips. As pled in the Second Amended Complaint, Defendants are alleged to have withheld and/or diverted servers' tips by requiring servers to pay between 2–3% of their total sales directly to the restaurant out of the tips they received. Plaintiffs allege that Defendants put this money in Defendants' bank account. From there, Defendants allegedly paid business expenses, including paying wages of other

5

employees. If the nightly tip out exceeded the wages owed to bussers, bartenders, and buffet runners, then Defendants are alleged to have retained this overage.

Second, Plaintiffs alleged that the tip-out itself is illegal. At the end of each shift, each server was required to pay Defendants a portion of tips earned based on the restaurant's daily sales. Tips earned by servers are considered "wages" under the SCPWA. *See, e.g., Gardner v. Country Club, Inc.*, 190 F.Supp.3d 504, 510 (D.S.C. 2016).[2] Defendants allegedly used these funds to pay restaurant expenses and the wages of other employees. As such, it is alleged that Defendants illegally withheld and/or diverted the nightly tip out that servers paid into each night and used it for their own benefit.

Third, Plaintiffs alleged that the silverware roller policy was illegal. Specifically, Defendants allegedly required servers to make a cash payout each shift to pay for silverware rollers to do tasks essential to Defendants' business. The silverware roller fee was alleged to be illegal and in violation of S.C. Code. Ann. § 41-10-30 because Defendants were not required or permitted to do so by state or federal law.

Fourth, by underpaying minimum wage, Defendants allegedly unlawfully withheld and/or diverted $5.12 per hour for every hour worked. Defendants were required to pay servers full minimum wage ($7.25 per hour) unless they complied with the requirements for taking a tip credit (*i.e.* pay less than minimum wage to employees who receive tips) in 29 U.S.C. § 203(m). Per the tip credit provision in 29 U.S.C. 203(m), the lowest wage rate a Defendant can pay is $2.13 per hour. Put simply, if Defendants comply with § 203(m), they can withhold or divert $5.12 per hour for each hour servers worked. From 2014 to 2017, Defendants allegedly failed to comply with § 203(m) because they paid servers only $2.125 per hour, underpaying them by $.005 per hour for

---

[2] Holding, "In light of the established purpose of the SCPWA and the analogous case law from other jurisdictions, the Court finds that tips meet the definition of wages under the SCPWA."

6

every hour worked. Consequently, by failing to comply with 29 U.S.C. §203(m), Defendants allegedly withheld and/or diverted $5.125 per hour for every hour worked.

Fifth, Plaintiffs alleged that Defendants improperly to have withheld and/or diverted wages to pay for uniform costs. The cost of the uniform was for Defendants' benefit, not the servers. By requiring servers to pay for uniforms, Defendants allegedly made servers pay for Defendants' expenses.

For all the claims, Defendants presented a combination of factual and legal defenses. Those defenses have largely been briefed or discussed in the pleadings, but most have not received definitive rulings. Thus, the possibility remained that either side could prevail in some or all aspects of the case.

The parties engaged in extensive discovery in both this case and *Gagliastre*, which culminated in the production of all payroll, tip out, and silverware roller records from 2014 to early 2021. Plaintiffs obtained deposition testimony of Captain George's of South Carolina, Inc., Captain George's of South Carolina, LP, Pitsilides Management, LLC, and George Pitsilides. The parties briefed and argued class certification and were prepared to file cross-motions for summary judgment on the issues of liability and damages before settling the case on the eve of the summary judgment deadline with mediator Dan Klein, resolving the case for $478,000.

### 3. Summary of Settlement Terms

The Settlement Agreement allocates $828,000 to globally resolve *Frykenberg* and *Tarry*, inclusive of attorney's fees, expenses, claims administration fees, and service awards. *See* Exhibit 1. From the global settlement, $478,000 is allocated to the *Tarry* class. Under the terms of the Settlement Agreement, each *Tarry* class member who worked for Defendants from May 19, 2014 to September 9, 2021 will receive a share of the settlement fund.

7

After subtracting fees, expenses, service awards, and claims administration costs, the remainder of the settlement fund will be distributed, pro rata, based on hours worked. Those class members who already received an award in *Gagliastre* will receive a substantially reduced amount. *See* Ex. 1 at ¶ 3(C)(i)-(ii). This includes the named plaintiffs. To the extent that money from the settlement remains unclaimed, it will be distributed either to the class members who cashed their settlement checks (if at least $5,000 is unclaimed) or *cy pres* to a charity if less than $5,000 remains. Order, Doc. 141, p. 4.

As part of the settlement, Defendants agree to not oppose Counsel's fee request for a fee award of 33.3% of the Settlement Fund, advanced expenses, service awards, and settlement administration costs which will be deducted from the Settlement Fund.

**4. The Court should grant final approval to the *Tarry* Settlement.**

Public policy favors the pretrial settlement of class action lawsuits. *See Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). The "general principle [is] that settlements are to be encouraged." *U.S. v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

"In order to review the merits of a proposed class action settlement, courts generally employ a two-step approach." *Horton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement . . . Second, after preliminary approval is granted and the class notified, the court holds a 'fairness' hearing, where all interested parties may be heard on the proposed settlement . . . After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id.*

In determining whether a settlement is fair, reasonable, and adequate, the Fourth Circuit considers the following factors: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, (4) the experience of counsel in the area of class action litigation, (5) the relative strength of the plaintiffs' case on the merits, (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (7) the anticipated duration and expense of additional litigation, (8) the solvency of the defendant and likelihood of recovery on a litigated judgment, (9) the degree of opposition to the settlement, and (10) the amount of the settlement. *1988 Tr. For Allen Children v. Banner Life Ins. Co.*, 28 F. 4th 513, 525–527 (4th Cir. 2022). A number of these factors are related, so Plaintiff discusses several together.

**(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations (5) the relative strength of the plaintiffs' case on the merits, (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (7) the anticipated duration and expense of additional litigation, (10) the amount of the settlement.** The preceding factors deal with evaluating the case's strengths and weaknesses compared to the settlement reached—i.e., in light of the difficulty of achieving a better result and/or risk of obtaining a worse result, is the settlement amount appropriate?

As detailed in numerous briefs and summarized in this Memorandum, Plaintiffs assert several wage-based claims under South Carolina law. As the parties' arguments reveal, the parties dispute how the law applies to the case's facts. Plaintiffs' claims present a high level of risk to the class because the legal determinations are essentially all-or-nothing: if Plaintiff prevails on their legal arguments, then Plaintiff would be entitled to a known set of damages; if Plaintiff does not

9

prevail on their legal arguments, then Plaintiffs would receive nothing. In other words, Plaintiffs claims are less about the extent of damages and more about the existence of damages in the first place. This situation presents a high level of risk to both parties.

Barring a settlement or victory on dispositive motions, the parties would need to prepare for and conduct a trial with numerous witnesses, voluminous records, and nearly a thousand class members. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants.

Here, the parties have thoroughly examined the claims at issue through discovery that spanned three lawsuits. That comprehensive discovery informed the parties' evaluation of the claims' strengths and weaknesses.

The settlement was reached after briefing and argument on class certification but before a decision. Defendants would likely argue that Rule 23 certification is improper, and appeal ruling under Rule 23(h). If Defendants prevailed, recovery would be limited to the three named Plaintiffs. If Plaintiffs prevailed, Defendants would argue (1) the tips that were retained remained in the employee payroll account, and were, in fact, distributed to servers and (2) the silverware roller policy was lawful.

Moreover, the case was settled on the eve of summary judgment. Both parties were prepared to present their legal and factual theories to the Court. Despite both parties likely moving for summary judgment, it was possible that issues would remain for trial, necessitating a fairly complex trial involving disputed facts and voluminous records.

Under the Settlement Agreement, the Class will receive $478,000. Plaintiffs' strongest claims in this case are the tip retention, silverware roller, and uniform claims. The unpaid wages from these

claims total approximately $655,000 on a class-wide basis, assuming Plaintiffs proved liability. Thus, the settlement amount is appropriate in light of the claims raised, amount at issue, and legal arguments.

The settlement was obtained through mediator Dan Klein during the full-day mediation in Atlanta, Georgia. "Supervision by a mediator lends an air of fairness to agreements that are ultimately reached." *Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 199143, at *28 (D.S.C. July 31, 2012). Given the adversarial nature of this case, as evidenced by the docket and the fact that the parties battled through three separate cases, there is no doubt that the parties negotiated at arm's length.

For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved.

**(4) the experience of counsel in the area of class action litigation.** Both Plaintiffs and Defendants are represented by competent and experienced counsel, which weighs in favor of settlement approval. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 U.S. Dist. LEXIS 89136, at *34 (E.D. Va. Sept. 28, 2009) (finding settlement was fair where counsel were "competent and well-experienced in handling federal court litigation in general and in particular in handling class action and multiple party claims").

**(8) the solvency of the defendant and likelihood of recovery on a litigated judgment.** This issue was not evaluated in this case. That said, commonsense indicates that there was a risk of an uncollectable judgment—this case involves a restaurant that had just paid a substantial, prior settlement and coming out of a pandemic.

**(9) the degree of opposition to the settlement.** There is no opposition to the settlement or even an opt-out. This strongly weighs in favor of approving the settlement.

11

* * *

All of the relevant factors support approving this class action settlement.

### 4.1. The Notice process was proper and met Rule 23's requirements.

In this case, Plaintiffs distributed notice of this settlement to 999 class members. Only 141 notices were returned as undeliverable. Of those, all but 34 were resent through either a forwarding address or an address trace. This is a rate of only 3.8% of the notices being undeliverable. No class member objected, and no class member opted out.

### 5. The Court should affirm the award of attorney's fees.

Plaintiffs' counsel requests a fee award of one-third of the common fund. Courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund are reasonable. *See, e.g., Montague v. Dixie Nat'l Life Ins. Co.*, Civil Action No. 3:09-00687-JFA, 2011 U.S. Dist. LEXIS 92178, at *6 (D.S.C. Aug. 17, 2011) (noting "[a]n award of fees in the range of 33% of the fund for work performed in the creation of the settlement of a settlement fund has been held to be reasonable by many federal courts."); *In re Allura Fiber Cement Siding Litig.*, No. 2:19-cv-mn-02886, 2021 U.S. Dist. LEXIS 96931, at *10 (D.S.C. May 21, 2021); *see also Chrismon v. Meadow Greens Pizza, Inc., et al.*, No. 5:19-cv-155, 2020 U.S. Dist. LEXIS 119873, at *12 (E.D.N.C. July 7, 2020) (collecting cases); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835, 2020 U.S. Dist. LEXIS 14772, at *8 (D. Md. Jan. 28, 2020) ("Contingent fees of up to one-third are common in this Circuit.").

Here, the Court has already approved the portion of the fees allocated to the *Frykenberg* settlement. Order, Doc. 141, p. 2. The Court likewise approved the fee award for *Tarry*, subject to any objections. *Id.* Because there have been no objections or a change in circumstances, Plaintiffs

ask that the Court affirm its prior award. Plaintiffs incorporate the information and arguments in Plaintiffs' Motion for Approval. *See* Doc. 134, pp. 30–38.

**6. The Court should award counsel with reimbursement for their out-of-pocket expenses.**

At the time, of Plaintiffs' prior Motion (Doc. 134), the full expenses were unknown. The expenses are now known, and Plaintiffs ask the Court to award an amount that will reimburse counsel for the expenses they advanced on behalf of the class.

The expenses are set forth in the below charts for both *Frykenberg* and *Tarry*. The expenses are reasonable and necessary for litigating the two cases. Those expenses that are allocated to both cases (*i.e.*, they benefited both) will be split between the two cases on a prorated basis based on the settlement amounts.

*Tarry*

| Date | Description | Amount |
|---|---|---|
| 2/26/2019 | Service of Process | $212.50 |
| 4/29/2019 | Pro Hac Vice Fees (Biller, Kimble, Krzeski) | $750.00 |
| 06/05/2019 | Court reporting fee for hearing transcript | $29.70 |
| 6/7/2019 | Additional Service of Process | $75.00 |
| 11/13/2019 | Fedex to Judge Geiger Lewis re: Discovery Dispute | $40.20 |
| 03/05/2020 | Filing Fee for Complaint, Summons, and Frisch Pro Hac Vice | $430.32 |
| 9/15/2020 | Pro Hac fees (Morgan) | $350.00 |
| 10/20/2020 | Postage | $15.80 |
| 10/29/2020 | Travel expenses (Frisch) | $528.20 |
| 11/5/2020 | Travel expenses (Frisch) | $468.10 |
| 4/7/2021 | Court reporting fee | $110.00 |
| 4/29/2021 | Fedex Motion for Class Certification sent to Judge Dawson | 69.75 |
| 5/04/2021 | Court reporting fee (Vigari 30b6) | $1,243.90 |
| 5/05/2021 | Pro Hac Vice fees for Nathan Spencer | $350.00 |
| 2021 | Mileage for hearing for Local Counsel | $76.16 |

13

|  | Total | $4,749.63 |
|---|---|---|

### *Frykenberg*

| Date | Description | Amount |
|---|---|---|
| 1/8/2020 | Service of Process | $135.00 |
| 3/05/2020 | Filing Fee, and Pro Hac Vice fees for Ryan, Biller, and Frisch | $1,150.00 |
| 09/01/2020 | Certificate of Good Standing for Andrew Kimble | $10.00 |
| 10/21/2020 | Reimbursement to Local counsel for filing fee and pro hac fees for Krzeski, Kimble, and Blankenship | $1,400.00 |
| 3/24/2021 | Collective Action Notice (CPT) | $1,542.30 |
| 7/30/2021 | Pro Hac – Morgan & Morgan | $350.00 |
|  | **Total** | **$4,587.30** |

### **Both**

| Date | Description | Amount |
|---|---|---|
| 09/02/2021 | Meal before hearing | 16.03 |
| 09/02/2021 | Gas to Florence for Hearing | 27.07 |
| 09/02/2021 | Speedway trip for Hearing | 11.00 |
| 09/02/2021 | Gas for drive to Hearing | 35.99 |
| 09/02/2021 | Flight to Atlanta for Mediation | 559.80 |
| 09/03/2021 | Hotel for Philip for Hearing | 123.60 |
| 09/03/2021 | Gas station for Hearing | 27.22 |
| 09/03/2021 | Gas station for Hearing | 9.48 |
| 09/03/2021 | Food in Florence for Hearing | 26.93 |
| 09/03/2021 | Gas Station for Hearing in Florence | 19.95 |
| 09/03/2021 | Hotel for Andrew for Hearing | 117.60 |
| 09/04/2021 | Rental Car for Hearing in Florence | 354.87 |
| 09/08/2021 | Airport Charge (Mediation) | 3.17 |
| 09/08/2021 | Food for Mediation | 22.04 |
| 09/08/2021 | Uber Charges | 23.98 |
| 09/09/2021 | Uber Charges | 4.79 |
| 09/09/2021 | Food for Mediation | 33.49 |
| 09/09/2021 | Food for Mediation | 69.98 |
| 09/09/2021 | Uber Charges | 7.25 |
| 09/10/2021 | Columbus Airport Parking for Mediation | 40.00 |
| 09/10/2021 | Hotel for Andy for Mediation | 328.48 |
| 09/10/2021 | Food for Mediation | 23.82 |

| | | |
|---|---|---:|
| 09/10/2021 | Kiosk at Airport for Mediation | 9.05 |
| 09/10/2021 | Hotel for Phil for Mediation | 328.48 |
| 09/10/2021 | Food for Mediation | 10.33 |
| 09/10/2021 | Food for Mediation | 30.00 |
| 09/10/2021 | Uber Charges | 22.90 |
| 09/22/2021 | Klein Mediation Fee | 3,168.00 |
| 8/4/2021 | Deposition/Transcript | $1,643.73 |
| 8/4/2021 | Deposition/Transcript | $1657.90 |
| 8/4/2021 | Deposition/Transcript | $567.53 |
| 8/4/2021 | Deposition/Transcript | $442.75 |
| | **Total** | **$9,767.21** |

Thus, in total Plaintiffs request that the Court award an expense reimbursement of $8,878.28 from the *Tarry* settlement and $10,225.86 from the *Frykenberg* settlement.

In addition, Plaintiffs ask the Court to award reimbursement for the costs of notice and administration for the two cases from CPT, a class action administration firm. CPT has billed $14,500, which includes all charges to date and an estimate for the work remaining to administer the settlement.

**7. The Service Awards are reasonable.**

Service awards, or incentive payments, are routinely awarded in FLSA collective and Rule 23 class actions. *See, e.g., Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 U.S. Dist. LEXIS 102373 (D. Md. July 22, 2013); *Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 2008) (stating that named plaintiffs are "an essential ingredient of any class action" and courts have held that incentive awards are appropriate to induce an individual to participate in worthy class action lawsuit). To determine whether such a payment is warranted, courts "consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 U.S. Dist. LEXIS 27329, at * 11 (D. Md. Mar. 23, 2010)).

Under the terms of the Settlement Agreement, the Named Plaintiffs will receive a service award of $10,000 each. They have contributed greatly to the settlement by participating in discovery, assisting Counsel with case strategy, participating in the mediation and zealously advocating for each respective class. There is no dispute that each class benefitted substantially from the efforts of the Named Plaintiffs. Without their actions, this settlement may not have been achieved. Moreover, the proposed award is consistent with service awards granted in other FLSA and Rule 23 cases. *See Chrismon v. Meadow Greens Pizza, LLC, et al.*, No. 5:19-cv-155 (E.D.N.C. July 7, 2020) (approving $10,000 incentive award for named Plaintiff); *Brown v. Charles Schwab, Inc.*, No. 2:07-03852, 2011 U.S. Dist. LEXIS 170270, at *21 (D.S.C. July 26, 2011) (approving $10,000 incentive award for named Plaintiff).[3]

Here, the Court has already preliminarily awarded the incentive awards, subject to any objections or other issues. There are no objections and no issues that would change this matter. Thus, Plaintiffs ask that the Court affirm the awards.

**8. Conclusion**

Plaintiffs ask the Court to enter an Order: (1) granting final approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; and (3) approving the requested service awards.

Respectfully submitted,

/s/Glenn V. Ohanesian
Glenn V. Ohanesian
Law Offices of Ohanesian & Ohanesian
504 North Kings Highway

---

[3] *See, e.g., Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving incentive payment of $10,000 for named plaintiff); *see also Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 U.S. Dist. LEXIS 156546, at *19 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiffs in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.").

P. O. Box 2433
Myrtle Beach, SC 29578
Email: OhanesianLawFirm@cs.com

Andrew R. Biller (*pro hace vice*)
Andrew P. Kimble (*pro hace vice*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-715-8711 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)

C. Ryan Morgan (*pro hac*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32802-4979
407 420-1414 (Phone)407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*pro hac vice*)
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400
Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed through the Court's ECF system, notice of which was sent to all counsel of record.

/s/Glenn V. Ohanesian
Glenn V. Ohanesian
Law Offices of Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Email: OhanesianLawFirm@cs.com